FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 23, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SUSAN BILL,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

No. 1:16-CV-3058-SMJ

**ORDER GRANTING PLAINTIFF'S SUMMARY JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION, AND REMANDING TO COMMISSIONER**

## I. INTRODUCTION

Before the Court, without oral argument, are the parties' cross-summary-judgment motions. ECF Nos. 13 & 14. Plaintiff Susan Bill appeals the Administrative Law Judge's (ALJ) denial of Social Security disability insurance and supplemental security income benefits. ECF No. 3. Plaintiff contends the ALJ erred by discrediting her testimony about the severity of her symptoms and by improperly weighing the opinion of her rheumatologist. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court finds that the ALJ failed to provide

SUMMARY JUDGMENT
ORDER **-** 1

specific, clear and convincing reasons supported by substantial evidence to discredit Bill's symptom testimony. The ALJ's finding that Bill is capable of performing light work with some additional limitations and resulting conclusion that she is not disabled are therefore not supported by substantial evidence. Accordingly, the Court grants Plaintiff's motion and denies the Commissioner's motion.

## II. BACKGROUND[1]

At the time of her hearing before the ALJ, Bill was 38 years old and lived in Wapato with her two young children and boyfriend. Tr. 42, 46–47. Bill suffers from a number of medical conditions including psoriatic arthritis, rheumatoid arthritis, migraine headaches, type 2 diabetes, and obesity. Tr. 20–21. Bill has her GED and completed a carpentry apprenticeship, and she has worked periodically as an office assistant and janitor. Tr. 42–45, 77. She has not worked since July 2009, when she was terminated from her position as a legal secretary. Tr. 296.

Bill filed applications for disability benefits and supplemental security income on November 10, 2011, alleging that her arthritis symptoms became disabling beginning August 28, 2010. Tr. 18. The claims were denied on February 16, 2012, and on reconsideration on May 1, 2012. Tr. 18. Bill filed a request for

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

SUMMARY JUDGMENT ORDER **-** 2

hearing on May 9, 2012, and a hearing before ALJ Larry Kennedy was held June 11, 2014. Tr. 18.

The ALJ issued his decision on August 11, 2014, concluding that Bill was not disabled within the meaning of the Social Security Act during the relevant time period. Tr. 15, 18. Bill requested review by Social Security Appeals Counsel. Tr. 14. The Appeals Counsel denied Bill's request for review of the ALJ's decision on March 4, 2016. Tr. 1–30.

Bill filed this action on April 15, 2016. ECF No. 1.

### III.  DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## IV. STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11 (citation

omitted).

Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

## V. DISCUSSION

The ALJ found that (1) Bill had not engaged in substantial gainful activity since August 28, 2010; (2) Bill had several medically severe impairments (rheumatoid arthritis, psoriatic arthritis, diabetes mellitus, headaches, and obesity); (3) Bill's impairments did not meet or medically equal the severity of any impairment listed by the Commissioner as so severe as to preclude substantial gainful activity; (4) Bill has the residual functional capacity to perform light work with some additional restrictions; and (5) Bill is capable of performing her past relevant work as a receptionist as well as well as many other jobs available in the national economy. Tr. 20–28. Bill challenges only the ALJ's decision at step four that Bill has the residual functional capacity (RFC) to perform light work with additional manipulative, postural, and environmental restrictions. Specifically, Bill argues that the ALJ improperly discredited her symptom testimony and erred in weighing the opinion of her treating rheumatologist.

### A. The ALJ failed to provide specific, clear and convincing reasons for rejecting Bill's symptom testimony.

Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of her symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). ALJs may consider many factors in weighing a claimant's credibility, including prior inconsistent statements, unexplained failures to seek treatment, and claimant's daily activities, among others. *Tommasetti*, 533 F.3d at 1039. Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.*

Bill asserts that her arthritis prevents her from doing any work. Tr. 52. She notes that on some days she can't move. Tr. 52. She states that she often has difficulty lifting, moving, and using her hands, and she sometimes has severe pain everywhere, particularly in her fingers, knees, and elbows. Tr. 55, 328, 334. She asserts that she has bad days where she just stays in bed about half of the time. Tr. 57. On those days, she states that her boyfriend cooks, takes care of the children, and does the cleaning. Tr. 58.

The ALJ concluded that Bill's "medically determinable impairments could possibly cause the alleged symptoms," but that Bill's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 23. Because the ALJ found that Bill's impairments could reasonably produce the symptoms she complains of, the question before the Court is whether the ALJ's reasons for discrediting Bill's testimony are sufficiently specific, clear, and convincing. *See Burrell*, 775 F.3d at 1137.

The ALJ stated five reasons in support of his finding that Bill's symptom testimony was not credible. First, the ALJ found that aspects of Bill's treatment record are inconsistent with symptoms as severe as Bill claims. Tr. 23–24. Second, the ALJ found that Bill was not fully engaged in or compliant with treatment. Tr. 24. Third, the ALJ found that Bill's alleged symptoms are contradicted by her daily activities. Tr. 24–25. Fourth, the ALJ found that Bill has engaged in drug-seeking behavior, which undermines the credibility of her claims. Tr. 23-25. Fifth, the ALJ found that Bill stopped working more than a year before her alleged onset date, suggesting that she was able to work despite her symptoms. Tr. 26. Only the first reason is supported by substantial evidence, and it cannot stand alone as a basis to discredit Bill's testimony.

**1. The ALJ's finding that the treatment record was inconsistent with Bill's testimony is supported by the record, but it is insufficient by itself to support discrediting her testimony.**

The ALJ cited a number of instances to support his conclusion that treatment records do not support Bill's claims about the severity of her symptoms. Tr. 23. The ALJ noted that exams in 2011 showed normal range of motion, that Bill's psoriasis symptoms were stable, that on one occasion Bill reported her pain as at 2 out of 10, and that Bill at times denied side effects from medication. Tr. 23. The ALJ concluded that these findings contradict Bill's assertion that she has "bad days" for up to two or three weeks of each month and is occasionally unable to walk. Tr. 23. The ALJ next noted that at treatment visits in the first half of 2012, Bill reported no new flare-ups and that her medication was working well. Tr. 23. Bill had symptom flares in August and November 2012, but the ALJ concluded that the record did not support that the symptoms were severe enough to be disabling. Tr. 23. The ALJ cites exams in April, June, and November 2013, and February 2014 demonstrating that Bill's objective physical symptoms were not severe and that her arthritis was being treated effectively with Remicade. Tr. 23. The ALJ also noted that there was little evidence of treatment for Bill's diabetes, and that her headaches appear to be controlled by medication. Tr. 24.

In addition to the evidence cited by the ALJ, there is considerable objective evidence that supports Bill's allegations about symptom severity. Nevertheless,

evidence in the record reasonably supports the ALJ's findings, and it is not this Court's role to second guess. However, because the ALJ concluded that Bill's impairments could possibly cause her alleged symptoms, the ALJ may not rely on medical evidence alone to discredit her testimony about the severity of her symptoms. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("A finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."). Accordingly, the ALJ did not err in considering medical evidence in determining credibility, but this evidence cannot stand alone as a basis to discredit Bill's testimony.

**2. The ALJ's finding that Bill has not engaged in treatment is unsupported by the record.**

The ALJ found that Bill "has not fully engaged in treatment or been compliant with medications, which suggests that her symptoms are not as severe as she alleges and has led to symptom flares." Tr. 24. The ALJ cited two incidents to support this conclusion. First, that in June 2011, Bill sought treatment for a symptom flare after not taking her medication over the weekend. Second, that Bill was discharged from physical therapy in August 2011 after missing appointments. Tr. 24.

"An 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)

SUMMARY JUDGMENT
ORDER **-** 10

(quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Bill argues that the ALJ improperly failed to consider Bill's explanation for the two incidents he cites. ECF No. 13 at 9. Bill argues that the record shows that she was unable to pick up her medication on the weekend where she did not take her medication, and that evidence demonstrates she may have failed to follow through with physical therapy because after her first session, her pain increased. ECF No 13 at 10; Tr. 477, 510. Bill also argues that there is no evidence suggesting that she stopped treatment because her symptoms were not severe, as the ALJ inferred. ECF No. 13 at 10.

The ALJ provides no indication that he considered Bill's explanations for failing to take medications. More importantly, the ALJ's conclusion that Bill's failure to take medication on one occasion suggests that her symptoms are not as severe as alleged is contradicted by the fact that Bill sought treatment for a severe flare immediately after the incident. The ALJ's finding that Bill failed to follow through with physical therapy is supported by the record, and Bill does not provide any evidence to explain this failure. However, this one example of failure to comply with a treatment recommendation does not support the ALJ's general conclusion that Bill has not fully engaged in treatment or been compliant with medications. The vast majority of the evidence in the record is to the contrary—it shows that over multiple years Bill generally complied with treatment recommendations and was

SUMMARY JUDGMENT
ORDER - 11

very engaged with her doctors in trying to identify effective treatment for her arthritis.

### 3. The ALJ erred in discrediting Bill's testimony on the basis of her daily activities.

Bill reported that her day-to-day activities often include preparing her kids for school, taking care of household chores, shopping, and preparing meals. Tr. 49, 330–33. When her children are not at school, she often cares for them, including preparing meals and assisting them with dressing and bathing. Tr. 49–50, 329. Bill also regularly drives short distances, and she reports engaging in five or more hours of physical activity per week. Tr. 50–51. Bill argues that the ALJ improperly found that her performance of these daily-living activities contradicted her claims of disability. ECF No. 13 at 10.

Daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony or (2) the "claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). However, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

SUMMARY JUDGMENT
ORDER - 12

The ALJ's conclusion that Bill's reported daily activities are consistent with the physical demands of light work (i.e., occasionally lifting up 20 pounds, regularly lifting 10 pounds, regularly walking or standing, 20 C.F.R. §§ 416.967(b), 404.1567(b)) is supported by substantial evidence. Tr. 24–25. But the ALJ's decision overlooks that Bill reports that on many days (usually nearly half of the month) Bill's symptoms prevent her from engaging in any of these daily activities. Tr. 56–58, 329–30. And on those days she receives help from her boyfriend and mother. Tr. 58, 329. That Bill reports she sometimes engages in daily activities consistent with the demands of light work does not contradict her testimony that her symptoms are at other times fully disabling and therefore she cannot engage in light work activity on a *sustained basis*. *See* 20 C.F.R. §§ 416.945(e), 404.1545(e). This is critically important because there is no competitive employment that this Court is aware of where an employee can maintain employment with unscheduled absences up to 50 percent of the month. Accordingly, the ALJ erred in discrediting Bill's symptom testimony on the basis of her daily activities.

**4. The ALJ improperly relied on Bill's drug use to discredit her symptom testimony.**

Bill does not dispute that the record contains evidence of potential substance abuse. ECF No. 13 at 15. Notably, on several occasions Bill sought emergency treatment for symptoms that were not fully supported by medical examinations, once she was allegedly found using and possessing prescription medications she

SUMMARY JUDGMENT
ORDER **-** 13

was not prescribed, reports indicate that Bill has stolen medication, and Bill was discharged from her pain clinic based on suspected misuse of prescriptions. Tr. 25, 677, 721–22, 724–26, 728–30, 733–35. Additionally, Bill failed to inform her rheumatologist that she was pregnant in 2013, and she asked her obstetrician not to inform her rheumatologist of her pregnancy. Tr. 25.

The ALJ here does not rely on inconsistent statements about drug use, which is a well-recognized basis for questioning a claimant's credibility. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("[C]onflicting or inconsistent testimony concerning alcohol use can contribute to an adverse credibility finding."); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.2002) (affirming adverse credibility finding based upon inconsistent statements to doctors about alcohol and drug use). Instead, the ALJ concluded that evidence that Bill engaged "drug-seeking behavior" and diverted her prescribed medications undermined her credibility. Tr. 25. Drug-seeking behavior can potentially undermine a claimant's credibility regarding the severity of pain where there is evidence that the claimant has exaggerated complaints of physical pain in order to receive prescription pain medication. *Cf. Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (affirming ALJ's rejection of physician's opinion where evidence suggested that claimant was exaggerating complaints of physical pain made to the physician in order to obtain prescription medications).

In this case, the ALJ improperly relied on Bill's drug-use to discredit her testimony for two reasons. First, it is not clear that the ALJ was actually relying on evidence that Bill exaggerated her symptoms in order to obtain pain medication as opposed to simply discrediting her testimony because of the fact that evidence demonstrated potential substance abuse. Importantly, Bill's alleged illegal drug use, diversion of medication, and attempt to hide her pregnancy from her rheumatologist have no apparent connection to any exaggeration of her pain symptoms. And the Court has found no authority supporting discrediting a claimant's symptom testimony based on the fact that she has abused illegal or prescription drugs. Second, to the extent Bill seeking treatment for pain symptoms that were not fully supported by physical examinations suggests she has exaggerated her pain symptoms, this is contradicted by objective evidence supporting of Bill's pain complaints, including that when she was discharged from a pain clinic for mishandling prescriptions, the discharge noted that "we do believe the patient is experiencing real pain," Tr. 677.

**5. The ALJ erred by discrediting Bill's testimony based on the fact that Bill stopped working before her alleged onset date.**

Bill stopped working approximately one year before her alleged symptom onset date. Tr. 296. The ALJ concluded that "the fact that her condition did not cause her to lose her job indicates that she was able to work despite her symptoms." Tr. 26. This is not a clear and convincing basis for discrediting Bill's symptom testimony. Why Bill was not working between July 2009 and August 2010 is not

relevant to whether she was disabled after August 2010, and it certainly does not demonstrate that she was able to work despite her symptoms.

**B.     The ALJ did not err in weighing Dr. Stone's opinion**.

In evaluating medical opinion evidence, the ALJ gave some weight to Disability Determination Services (DDS) consultants, who, after reviewing the record and assessing Bill, concluded that Bill was capable of light work. Tr. 26. The ALJ also gave some weight to the observations of Dr. Stone, Bill's Rheumatologist. Tr. 26. Dr. Stone declined to fill out disability paperwork and suggested that Bill apply for short-term disability and re-assess her condition in three to six months. Tr. 26. The ALJ concluded that Dr. Stone's recommendation suggests that Bill's condition was expected to improve.

Bill argues that the ALJ erroneously interpreted Dr. Stone's opinion, arguing that the only conclusion that may be drawn from Dr. Stone's opinion is that that Bill was totally disabled at the time of the examination in April 2013. ECF No. 13 at 17. Accordingly, Bill argues that by concluding that Bill's condition was likely to improve, the ALJ was actually rejecting the opinion of a treating provider, which requires specific and legitimate reasoning. ECF No. 13 at 18.

Bill is correct that the uncontradicted opinion of a treating physician may be rejected only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). But the ALJ here did not reject Dr. Stone's opinion, he gave the

opinion some weight. And Dr. Stone's decision not to fill out permanent disability paperwork and recommendation that Bill apply for short-term disability reasonably supports the ALJ's conclusion that Dr. Stone expected Bill's condition to improve. Accordingly, the ALJ did not err in weighing Dr. Stone's opinions.

## VI. CONCLUSION

The Court finds that because the ALJ failed to provide specific, clear and convincing reasons for discrediting Bill's symptom testimony, the ALJ's finding that Bill is capable of engaging in light work and therefore not disabled is not supported by substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.
2. The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.
3. This matter is **REMANDED** to the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this order.
4. **JUDGMENT** is to be entered in the Plaintiff's favor.
5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 23rd day of June 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

SUMMARY JUDGMENT ORDER **-** 18